UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>   v.<br><br>BRENDA TRINIDAD JAIME-SAINZ,<br><br>           Defendant. | Case No. 1:16-cr-00114-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendant Brenda Trinidad Jaime-Sainz (Defendant) has filed a Motion for Reduction of Sentence on compassionate release grounds, with exhibits and a supporting Reply. Dkt. 102. The government opposes the motion. Dkt. 108. She has also filed a Motion for Appointment of Counsel, asserting that she is entitled to a sentence reduction under Amendment 821 to the United States Sentencing Guidelines (USSG). Dkt. 103. For the reasons stated below, the Court will deny these motions.

## BACKGROUND

The following information is found in the Presentence Investigation Report (PSI). Dkt. 56. With the aid of a confidential informant (CI), investigators learned

Defendant and a male co-defendant were trafficking in large amounts of methamphetamine in 2016. Defendant lived in Yakima, Washington, but travelled frequently to Twin Falls to sell methamphetamine. On April 6, 2016, the CI contacted Defendant and ordered two pounds of methamphetamine for $5,000 per pound to be delivered 10 days later in Twin Falls. On April 17, 2016, the CI and an undercover officer met with Defendant at a predetermined location. Defendant's twelve-year-old son was with her in the vehicle. Defendant's son handed the methamphetamine to the CI and accepted the payment. Laboratory testing determined that Defendant delivered 892.52 grams of actual methamphetamine.

On April 21, 2016, the CI contacted Defendant and ordered four pounds of methamphetamine. Defendant told the CI that she would be in Twin Falls the weekend of April 23, 2016. On April 23, 2016, Defendant was stopped on her way to Twin Falls and arrested. Defendant's twelve-year-old son was again in the vehicle. After her arrest, officers conducted a search of her vehicle and located nine individually packaged one-pound containers of methamphetamine that were packaged identically to the two pounds previously purchased by the CI. Laboratory testing determined that Defendant possessed 3,908.48 grams of actual methamphetamine.

MEMORANDUM DECISION AND ORDER - 2

After Defendant's arrest, investigators executed search warrants at various locations, including her residence, where they located a .22 caliber pistol that had been reported stolen in Twin Falls. Defendant admitted that the firearm was hers. A stash house used by Defendant and others to traffic drugs contained more methamphetamine, heroin, an AK-47 rifle, two handguns, drug packaging material, a digital scale, ledger, body armor, and currency. Defendant admitted to having seen firearms at the stash house.

A search conducted on the storage unit used by her co-defendant revealed five pounds of methamphetamine, $16,714 in cash, and multiple firearms. A drug ledger found in Defendant's possession showed her co-defendant at one point owed her $90,000 for past drug debts, proving that Defendant had distributed many more pounds of methamphetamine than were seized from her.

Defendant was charged and convicted of the crimes of Conspiracy to Distribute Methamphetamine, Distribution of Methamphetamine, and Possession of Methamphetamine with Intent to Distribute. Dkts. 1, 68. At sentencing, the PSR identified her base offense level as 36, noting, however, that this was a conservative estimate and the drug ledgers would confirm that the defendant had, in the past, delivered much greater quantities of methamphetamine. PSR at 9. Defendant received a two-level enhancement under USSG § 2D1.1(b)(1) for

possessing a dangerous weapon (a firearm). Another two-level enhancement was added for Defendant using her minor child to commit the offense. Three levels were removed for acceptance and timely acceptance of responsibility.

With these adjustments, the final total offense level was 37, with a criminal history category of I, and a guideline range of 210-262 months. Dkt. 57 at 1. The Court sentenced the Defendant to the low-end of the guideline range of 210 months. Dkt. 72.

Defendant is currently housed at Aliceville FCI and has served approximately half of her sentence. Her projected release date is March 22, 2031. Dkt. 108-1 at 2. An ICE detainer is currently in place, and it is expected that she will be deported to Mexico upon her release. *Id*. at 3.

## COMPASSIONATE RELEASE MOTION

### 1. Legal Standard

The Court may not modify a defendant's sentence once imposed, except in limited circumstances. *Dillion v. United States,* 560 U.S. 817, 819 (2010). Congress provided for a "compassionate release" exception in 18 U.S.C. § 3582(c)(1)(A).

The Court may grant release if it finds the defendant meets three prongs: (1) the defendant exhausted administrative remedies available in the BOP, 18 U.S.C. §

MEMORANDUM DECISION AND ORDER - 4

3582(c)(1)(A); (2) the defendant's reasons for release are extraordinary and compelling, pursuant to the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b); and (3) the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence reduction.

The second prong, that defendant bears the burden of showing that "extraordinary and compelling reasons warrant such a reduction" under U.S.S.G. § 1B1.13(b), provides that the defendant may qualify if one or a combination of any of the following reasons, in pertinent part, is met: The defendant is suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover, or the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death; or if caregiver of the defendant's minor child dies or is incapacitated. *See* U.S.S.G. § 1B1.13 (unnumbered and condensed).

The third prong is consideration of the factors in 18 U.S.C. §3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to

MEMORANDUM DECISION AND ORDER - 5

protect the public from further crimes of the
defendant; and (D) to provide the defendant
with needed educational or vocational training,
medical care, or other correctional treatment in
the most effective manner.

## 2. Analysis

### A. <u>Exhaustion Requirement</u>

First, the exhaustion requirement must be met. 18 U.S.C. § 3582(c)(1)(A).
The Government agrees that Defendant exhausted her administrative remedies by
petitioning the Warden of Aliceville FCI for compassionate release. The Court
concludes that Defendant has properly exhausted her administrative remedies.

### B. <u>Extraordinary and Compelling Reasons</u>

Defendant asserts that the COVID-19 pandemic is grounds for
compassionate release. It appears these arguments were cut and pasted from
another inmate's motion. COVID-19 no longer is a pandemic. Defendant's medical
records show that she has minimal health concerns, and that she has received a
COVID-19 vaccination. No facts support this argument as a ground for release.
Defendant's medical condition does not constitute "an extraordinary and
compelling reason." *See United States v. Alberg*, No. 1:18-CR-00342-BLW, 2023
WL 7164563 *2 (D. Idaho Oct. 30, 2023) (same); *United States v. Rodriguez*, 424
F. Supp. 3d 674, 682 (N.D. Cal. 2019) (collecting cases holding the same).

MEMORANDUM DECISION AND ORDER - 6

Defendant also points to her rehabilitation record. It is commendable that Defendant has completed numerous post-sentencing courses and programs. Even so, Defendant's post-sentencing conduct, considered together with her other evidence, does not constitute an extraordinary and compelling circumstance. *See, e.g., United States v. Smith*, No. 1:11-CR-00027-BLW-2, 2022 WL 4585894 *4 (D. Idaho Sept. 29, 2022); *United States v. Reyes-Yanez*, No. 16CR1283-MMA-3, 2024 WL 4573751, at *3 (S.D. Cal. Oct. 24, 2024).

Another way to meet the extraordinary circumstances factor is to show "[t]he death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G. § 1B1.13(b)(3)(A). Defendant's release plan states, "I have a secure job, home and family support." Dkt. 102-2 at 4. Defendant's adult daughter states that Defendant is ready to come home to her kids. Dkt. 102-4. It appears that Defendant's minor children reside with their fathers in various states. Dkt. 56 at 14.

But an ICE detainer is currently in place, which means that Defendant is subject to deportation to Mexico upon her release. Dkt. 102-3. There is no indication that Defendant's children do not have stable caretakers or that Defendant would actually be able to gain custody of her children, given that she is subject to deportation. Therefore, Defendant's family circumstances do not constitute an extraordinary and compelling circumstance at this time.

MEMORANDUM DECISION AND ORDER - 7

C. **Section 3553(a) Factors**

Compassionate release is appropriate when the § 3553(a) factors (1) and (2)(A) through (D) weigh in favor of release, which the Court now analyzes.

Factor (1) is "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a). Defendant's particular offenses are serious, and the evidence of the extent of her overall trafficking activity is very serious. She involved her minor son in drug transactions, she possessed a firearm, and her records show an enormous amount of trafficking activity.

Factor 2(A) is the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Defendant has served only approximately half of her sentence. Permitting her to be released at this juncture would not serve these purposes.

Factor 2(B) is the need for the sentence imposed to afford adequate deterrence to criminal conduct. Because Defendant was engaged in the trafficking of a large amount of drugs, reducing her sentence at this point under these circumstances would not provide an adequate deterrent effect for herself or others.

Factor 2(C) is the need for the sentence imposed to protect the public from further crimes of the defendant. Defendant's disregard for the law in the trafficking of large quantities of drugs and transporting them into Idaho for use by Idaho citizens does not weigh in favor of release. In addition, placing her minor son at

MEMORANDUM DECISION AND ORDER - 8

risk by involving him in the trafficking shows a lack of reasonable care for the vulnerable members of society.

Factor 2(D) is the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Defendant can continue to participate in rehabilitative classes and activities in prison. Given her difficult personal history, trafficking history, her past disregard for consequences her children during commission of crimes, and the need for punishment and deterrence, the Court finds that Defendant's rehabilitation needs are better met in prison.

Overall, the § 3553(a) factors do not weigh in favor of release.

## USSG AMENDMENT 821 ARGUMENT

Defendant also requests that the Court appoint counsel for her to pursue a reduction of her sentence under USSG Amendment 821 parts A and B, which took effect on November 1, 2023.

### 1.  Standard of Law

Under 18 U.S.C. § 3582(c)(2), the court may modify a term of imprisonment if (1) the United States Sentencing Commission subsequently lowered the defendant's sentencing range, (2) a reduction is consistent with the applicable policy statements issued by the Sentencing Commission, and (3) the court

considers the 18 U.S.C. § 3553(a) factors. *United States v. Paulk*, 569 F.3d 1094, 1095 (9th Cir. 2009), *as amended* (Aug. 6, 2009).

To determine the extent of the reduction, the Court must determine the amended guideline range that would have been applicable to the defendant if the amendment had been in effect at the time of sentence. *See* USSG § 1B1.10(b)(1). The extent of the reduction is strictly limited to the low end of the new applicable guideline, with one exception (where the defendant received a below-guideline sentence based on substantial assistance). *See* USSG § 1B1.10(b)(2).

Part A of Amendment 821 limits the criminal history impact of "status points" under U.S.S.G. § 4A1.1(e). Amendment 821 (1) eliminate status points for any defendant who has six or fewer criminal history points; and (2) applies one point, instead of two, for defendants who has seven or more criminal history points. Thus, a person who otherwise has seven criminal history points or more now is lowered to only one additional "status" criminal history point instead of two, while a person who has six criminal history points or fewer is lowered to zero status points.

Part B of Amendment 821 applies to certain zero-point offenders (defendants with no criminal history) only if the offense underlying their conviction meets all of the Sentencing Guideline's criteria set forth in U.S.S.G. § 4C1.1(a), including, in pertinent part here, that "the defendant did not possess,

MEMORANDUM DECISION AND ORDER - 10

receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."

On December 6, 2023, after the Commission declared Amendment 821 retroactive, this Court entered General Order 435, which adopts a procedural order for the review of defendants potentially eligible for sentencing reductions under 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the Sentencing Guidelines. The procedural order provides for a review committee to review each case and attempt to reach stipulations on eligibility. The Government learned that Defendant's case was not screened by the review committee. On August 5, 2024, Defendant filed a letter with the Court seeking appointment of counsel and evaluation under Sentencing Guideline Amendment 821 parts A and B. Dkt. 103. Evaluation of eligibility does not require appointment of counsel, and the Court may properly consider this issue based on the sentencing materials in this case.

## 2.  Analysis

The Government argues that Defendant clearly is not eligible for a reduction of sentence; therefore, appointment of counsel is not warranted. The Court agrees.

Defendant is a zero-point offender. However, the newly enacted USSG § 4C1.1 does not apply to her because she possessed a firearm in connection with the

MEMORANDUM DECISION AND ORDER - 11

offense. *See* U.S.S.G. § 4C1.1(a)(7). Therefore, the amendment does not "subsequently lower the defendant's sentencing range" as required by 18 U.S.C. § 3582(c)(2), and she is ineligible for a reduction in sentence.

### 3. Conclusion

Defendant Brenda Jaime Sainz is not entitled to compassionate release under § 3582(c)(1)(A). Nor is she entitled to a sentence reduction under USSG Amendment 821, § 4C1.1, and, because that conclusion is clear, appointment of counsel is unnecessary. Therefore, her motions will be denied.

### ORDER

**IT IS ORDERED:**

1. Defendant Brenda Jaime Sainz's Motion to Appoint Counsel (Dkt. 103) is DENIED.

2. Defendant Motion for Compassionate Release (Dkt. 102) is DENIED.

DATED: August 4, 2025

B. Lynn Winmill
U.S. District Court Judge